IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Action No. 05-85 |
| | : | |
| vs. | : | |
| | : | |
| ZINN McFARLIN | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Zinn McFarlin, by his attorney, Thomas A. Dreyer, Esquire, hereby respectfully submits a Sentencing Memorandum setting forth all the factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives contained in 18 U.S.C. Section 3553(a).

Mr. McFarlin is a 25-year-old African-American man. He has five children. He confessed to this offense when arrested on October 28, 2005. He has not violated any of the terms of his pretrial detention. He accepted responsibility for his conduct. He has almost acquired a GED. A sentence of 30 months is sufficient but not greater than necessary to comply with the provisions of Section 3553(a).

### Sentencing Under *Booker*

On January 12, 2005, the United States Supreme Court ruled that its Sixth Amendment holdings in Blakely v. Washington, 124 S.Ct. 2531 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000), apply to the Federal Sentencing Guidelines ("FSG"). United States v. Booker, 125 S.Ct. 738, 756 (2005). Given the mandatory nature of the FSG, the Court found

"no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the" FSG in the cases before the Court.  ID. at 751.  Accordingly, it reaffirmed its holding in Apprendi and concluded that

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

Id. At 756.

Based on this conclusion, the Supreme Court further found that the provisions of the federal Sentencing Reform Act of 1984 ("SRA") which make the FSG mandatory (18 U.S.C. Section 3553(b)(1)) and which rely upon the mandatory nature of the FSG (18 U.S.C. Section 3742(e)) are incompatible with its Sixth Amendment holding.  Booker, 125 S.Ct. at 756.  It thus excised those provisions, "mak[ing] the Guidelines effectively advisory."  Id. At 757.

As revised by Booker, the SRA now

> requires a sentencing court to consider Guideline ranges, see 18 U.S.C.A. Section 3553(a)(4)(Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see Section 3553(a).

Booker, 125 S.Ct. at 757.  Therefore, Booker permits sentencing courts to treat the FSG as just one of the several equally important factors outlined in 18 U.S.C. Section 3553(a).  See United States v. Jackson, 408 F.3d 301, 304 (6th Cir. 2005) (the FSG range is only "one factor of several laid out in Section 3553(a)" which district courts are required to consider in arriving at a defendant's sentence).

According to the Third Circuit in United States v. Miller, 2005 U.S.App.LEXIS 15604 (3rd Cir. 2005), the net effect of Booker was to delete the mandatory nature of the FSG

and transform them to advisory guidelines.  See United States v. Roche, 415 F.3d 614, 619 (7th Cir. 2005) (by severing the provisions of the SRA which made the FSG mandatory, the United States Supreme Court in Booker "demoted the Guidelines from rules to advice").

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2."  Section 3553(a)(2) lists these purposes as:

>   (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>   (B)  to afford adequate deterrence to criminal conduct;
>
>   (C)  to protect the public from further crimes of the defendant; and,
>
>   (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the effective manner.

Section 3553(a) further directs sentencing courts to consider the following factors in determining the minimally sufficient sentence:

>   1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   2)  the kinds of sentences available;
>
>   3)  the kinds of sentence and the sentencing range established by the FSG;
>
>   4)  any pertinent policy statement issued by the Sentencing Commission which is effect on the date the defendant is sentenced;
>
>   5)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and,
>
>   6)  the need to provide restitution to any victims of the offense.

18 U.S.C. Section 3553(a)(1) and (a)(3) through (a)(7).

Sentencing courts are given discretion by other statutory provisions as well. Under 18 U.S.C. Section 3582(a), imposition of a term of incarceration is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to 'recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation". (Emphasis added.)

Under 18 U.S.C. Section 3661, "*No limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence". (Emphasis added.) This statutory language clearly overrides the now advisory policy statements contained in Part H of the FSG which list as "not ordinarily relevant" to sentencing numerous factors such as the defendant's age, educational and vocational skills, mental and emotional condition, drugs or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. Section 5H1. See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account the fact that the defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since the rate of recidivism decreases with age and citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines (May 2004); also taking into account the defendant's strong family ties, his need for treatment for his serious addiction to crack cocaine, his serious medical problems, and his honorable discharge from the United States Army).

According to the directives of Booker and Section 3553(a), sentencing courts may no longer apply the FSG in an uncritical manner. Such an approach would be "inconsistent with

the holdings of the merits majority in <u>Booker</u>, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in <u>Booker</u>, directing courts to consider all of the Section 3553(a) factors, many of which the guidelines either reject or ignore." <u>United States v. Ranum</u>, 353 F.Supp.2d 984, 985-86 (E.D.Wisc. 2005) (Adelman, J.).  As another district court has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in <u>Booker</u>." <u>United States v. Jaber</u>, 362 F.Supp.2d 365, 371-72 (D.Mass. 2005) (Gertner, J.).  <u>See also</u> <u>United States v. Strange</u>, 370 F.Supp.2d 644, 650 n. 7 (N.D.Ohio 2005) (the FSG do not operate as a sort of "super factor" trumping everything else in all but unusual cases).

Justice Scalia explains this point well in his dissent from <u>Booker</u>'s remedial holding:

> Thus, logic compels the conclusion that the sentencing judge,
> after considering the recited factors (including the guidelines),
> has full discretion, as full as what he possessed before the Act
> was passed, to sentence anywhere within the statutory range.
> If the majority thought otherwise – if it thought the Guidelines
> not only had to be 'considered' (as the amputated statute requires)
> but had generally to be followed – its opinion would surely say so

<u>Booker</u>, 125 S.Ct. at 791 (Scalia, J., dissenting in part).  Likewise, if the remedial majority in <u>Booker</u> thought that the FSG had to be given "heavy weight", its opinion would have said so.  The remedial majority clearly understood that giving any extra weight to the guideline range violates the Sixth Amendment.

In conclusion, sentencing courts must now consider <u>all</u> of the Section 3553(a) factors, and not just the FSG, in determining a sentence which is sufficient but not greater than necessary to meet the goals of sentencing.  Moreover, if the FSG conflict with the other

sentencing factors enumerated in Section 3553(a), these statutory sentencing factors should generally trump the FSG.  See United States v. Denardi, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J., concurring in part, dissenting in part) (listing the four purposes of sentencing as retribution, deterrence, incapacitation and rehabilitation and arguing that since Section 3553(a) requires that a sentence be no greater than necessary to meet these purposes, the imposition of a sentence greater than necessary to meet them violates the statute and is reversible, even if it is within the guideline range).

### Application of the Statutory Sentencing Factors to the Instant Case

The following factors must be considered in this case in determining what length of sentence is sufficient but not greater than necessary to satisfy the purposes of sentencing:

**1. The Nature and Circumstances of the Offense and the History and Characteristics of The Offender**

**(A)  Nature and Circumstances of the Offense**

On February 23, 2004, Mr. McFarlin sold 26.8 grams of crack to a confidential informant working with the United States Drug Enforcement Administration.  On April 23, 2004, he sold 27.1 grams of crack to the same informant.  On May 4, 2004, a search warrant was executed at his apartment in Wilmington and 3.6 grams of crack were seized.

Mr. McFarlin stipulated that his relevant conduct involved the distribution of 57.5 grams of crack.  He pled guilty to Count Three of the Indictment charging him with Possession with the intent to distribute a detectable amount of cocaine base or crack in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C).

**(B)  History and Characteristics of Mr. McFarlin**

Mr. McFarlin is 25 years of age.  He is planning to marry Tyeisha Brown after

his release from prison.   They are the parents of a one-year old son.   He is the father of four other very young children.

Mr. McFarlin is a life-long resident of Wilmington.

Following his arrest on October 28, 2005, he waived his right to speak with an attorney and gave an incriminating statement to DEA Task Force Officer Donald Pope.

Since October 28, 2005, Mr. McFarlin has been in pretrial detention.   He has received no disciplinary misconducts and no write-ups at the Salem County Correctional Facility.   Moreover, he has taken the following positive steps to move his life in a different direction:

A.  He attempted to obtain a General Equivalency Diploma.   He passed Language Arts in Reading, Language Arts in Writing, Science and Social Studies.   As soon as he passes Mathematics, he will have earned his GED.

B.  He participated in the Anger Management Workshop.

C.  He attended SODAT meetings for his drug and alcohol problem in November 2005 and December 2005.   The person who runs this program has not showed up for these meetings in 2006.

D.  In lieu of the SODAT meetings, he has attended weekly AA meetings since the beginning of 2006.

E.  He has attended weekly church services and weekly bible study classes since November 2005.

F.  He attempted to obtain employment, but was informed that federal inmates are not permitted to have jobs in this facility.

On December 19, 2005, Mr. McFarlin accepted responsibility for his conduct in this case.

**2. The Need for the Sentence Imposed to Promote Certain Statutory Objectives**

    **(A)  To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

Under all the circumstances of this case, a sentence of 30 months reflects the seriousness of Mr. McFarlin's offense, promotes respect for the law and provides just punishment in that it (together with a lengthy period of supervised release) keeps him under Court supervision for a significant period of time.

    **(B)  To afford adequate deterrence to criminal conduct**

Since October 28, 2005, Mr. McFarlin has done everything possible to demonstrate that he will commit no other crimes in the future.  He has not violated his pretrial detention in any way.  He has started the process of becoming a law-abiding member of the Wilmington community.  It is clear that he has been deterred from further criminal activity.

    **(C)  To protect the public from further crimes of the defendant**

As noted in the preceding paragraphs, Mr. McFarlin has taken concrete steps to move his life in a positive direction.  He has demonstrated that he will not commit any further crimes.

    **(D)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Mr. McFarlin is trying to obtain his GED and would appreciate any assistance in achieving this goal.  He would also like to attend the Bureau of Prisons' Residential Drug Abuse Treatment Program in order to help him overcome his drug and alcohol problem; U.S. Probation

Officer Martin P. Durkin describes him as 'a suitable candidate' for this program in Paragraph 55 of the Presentence Investigation Report.

**3. The Kinds of Sentences Available**

Since Mr. McFarlin pled guilty to a Class C felony, a sentence of imprisonment is available. 18 U.S.C. Section 3581. The imposition of a fine is available. 18 U.S.C. Section 3571.

**4. The Sentencing Range Established by the Sentencing Commission**

The FSG range of imprisonment is calculated as follows:

1. A base offense level of 32 for 50 to 150 grams of cocaine base pursuant to U.S.S.G. Section 2D1.1(c)(4).

2. A three-level reduction for his acceptance of responsibility pursuant to U.S.S.G. Section 3E1.1.

3. A total offense level of 29.

4. Criminal History Category III.

5. A range of 108 to 135 months.

In Booker, the Supreme Court excised 18 U.S.C. Section 3553(b), the portion of the federal sentencing statute which made it mandatory for courts to sentence within a particular sentencing guideline range. Booker, 125 S.Ct. at 756. This renders the FSG advisory. Id. The advisory guideline range for imprisonment in this case thus is 108 to 135 months.

**5. Pertinent Policy Statement**

There are no pertinent policy statements.

**6. The Need to Avoid Unwarranted Sentencing Disparities**

One of the primary purposes of the FSG is to reduce unwarranted sentencing disparity between similarly situated defendants across the United States. According to the Introduction to the FSG, ". . . Congress sought <u>uniformity</u> in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar conduct by similar offenders". (Emphasis in original.)

Mr. McFarlin's offense involved cocaine base or "crack". The FSG establish a 100 to 1 quantity ratio of powder cocaine to crack. According to the United States Sentencing Commission, this ratio leads to a substantial disparity which has increased the gap in average sentences between racial groups and this disparity is unwarranted because "the harms associated with crack cocaine do not justify its substantially harsher treatment compared to powder cocaine". <u>See</u> United States Sentencing Commission, <u>Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Criminal Justice System is Achieving the Goals of Sentencing Reform</u>, pp. xv-xvi (Nov. 2004).

Sentences below the applicable guideline ranges were imposed as reasonable in several post-<u>Booker</u> crack cases. <u>See</u> <u>Simon v. United States</u>, 361 F.Supp.2d 35, 44-47 (E.D.N.Y. 2005); <u>United States v. Harris</u>, 2005 U.S.Dist. LEXIS 3958 (D.D.C. 2005).

In <u>United States v. Smith</u>, 359 F.Supp.2d 771, 777-82 (E.D.Wis. 2005), the Honorable Lynn Adelman indicated that the Commission has concluded that its own data do not support the assumptions upon which the 100 to 1 ratio was based. First, Congress intended to target serious drug dealers; the data show that 67% of federal crack dealers are street level dealers. Second, Congress believed that crack was associated with other harmful conduct; the

data demonstrate that aggravating conduct occurs in only a small percentage of crack cases. Third, Congress thought that crack was much more addictive than powder cocaine; the data indicate that crack is not more dangerous than powder cocaine. She then noted "that the unjustifiably harsh crack penalties disproportionately impact on black defendants". She stated:

> Primarily as a result of the different penalties for crack and powder cocaine, and contrary to one of the Sentencing Reform Act's primary goals, the sentencing guidelines have led to increased disparity between the sentences of blacks and whites. Before the guidelines took effect, white federal defendants received an average sentence of 51 months and blacks an average of 55 months. After the guidelines took effect, the average sentence for whites dropped to 50 months, but the average sentence for blacks increased to 71 months. (Citation omitted.)

In United States v. Beamon, 373 F.Supp.2d 878, 886-87 (E.D.Wis. 2005), Judge Adelman again discussed her intellectual difficulties with the 100 to 1 ratio by stating:

> . . . a court acts well within its discretion under Section 3553(a) in sentencing below the guideline range to account for the unreasonable inflation of sentences called for in crack cases. A court also acts well within its discretion in concluding that the guidelines create unwarranted disparities between crack and powder cocaine defendants.

Mr. Farlin's relevant conduct involves 57.5 grams of crack and the applicable FSG range is 108 to 135 months. Had the substance been 57.5 grams of cocaine instead, he would have been facing a range of only 18 to 24 months calculated as follows:

1. A base offense level of 16 for 50 to 100 grams of cocaine pursuant to U.S.S.G. Section 2D1.1(c)(12).

2. A three-level reduction for acceptance of responsibility.

3. A total offense level of 13.

4. Criminal History Category III.

5. A range of imprisonment of 18 to 24 months.

The Court can avoid the unwarranted disparity caused by the 100 to 1 crack-to-powder-cocaine ratio in this case by sentencing Mr. McFarlin to incarceration of 30 months. Such a sentence is reasonable because it reflects the current understanding of crack and the harms associated with it as outlined by the Commission and by Judge Adelman in <u>United States v. Smith</u>, supra, and <u>United States v. Beamon</u>, supra.

**7. The Need to Provide Restitution to Any Victims of the Offense**

    There is no restitution.

    **Proposed "Statement of Reasons Pursuant to 18 U.S.C. Section 3553(c)" for Sentence Below Guideline Range**

The sentence departs below the guideline range for the following reasons:

1. Mr. McFarlin is the father of five young children.

2. He confessed to his crime immediately after his arrest.

3. He complied with all the conditions of his pretrial detention.

4. He accepted responsibility for his conduct.

5. He pursued a General Equivalency Diploma while in pretrial detention. Despite having only an 8th grade education, he passed four of five subjects. He will obtain the GED as soon as he passes Mathematics.

**Conclusion**

The Court may vary from the advisory guideline range of imprisonment of 108 to 135 months based upon the factors set forth in 18 U.S.C. Section 3553(a) as long as the variance is reasonable. United States v. Shannon, 414 F.3d 921, 923 (8th Cir. 2005). Mr. McFarlin respectfully submits that, under all the circumstances of this case, a sentence of 30 months is reasonable and that it is sufficient, but not greater than necessary, to comply with these statutory directives.

Mr. McFarlin hereby requests a sentence of 30 months to be followed by a lengthy period of supervised release. In addition, he requests that the Court:

1. Recommend to the United States Bureau of Prisons ("BOP") that he receive treatment in its Residential Drug Abuse Treatment Program.

2. Recommend to the BOP that he serve this sentence at a facility as close as possible to Wilmington.

3. Recommend to the BOP that he receive credit towards his sentence from October 28, 2005, the date of his arrest.

td347370
Thomas A. Dreyer, Esquire
6 Dickinson Drive
Building 100 – Suite 106
Chadds Ford, PA  19317
610-358-4454
Attorney for Defendant Zinn McFarlin

Dated:  March 2, 2006

## **CERTIFICATE OF SERVICE**

       Thomas A. Dreyer, Esquire hereby certifies that he served true and correct copies of the foregoing Defendant Zinn McFarlin's Sentencing Memorandum upon the persons listed below on the date listed below by first class mail, postage prepaid:

    David L. Hall
    Assistant United States Attorney
    The Nemours Building
    1007 Orange Street – Suite 700
    P.O. Box 2046
    Wilmington, DE  19899-2046

    Martin P. Durkin
    U.S. Probation Officer
    Suite 400
    824 Market Street
    Wilmington, DE  19801-3588

                                                      **td347370**
                                                    Thomas A. Dreyer, Esquire

March 2, 2006